**Opinion issued November 26, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-21-00519-CV

———————————

**ANITA F. KAWAJA, Appellant**

**V.**

**DEREK U. OBIALO, Appellee**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-18043**

---

### MEMORANDUM OPINION ON REHEARING

This is an interlocutory appeal from the denial by operation of law of appellant Anita F. Kawaja's motion to dismiss under the Texas Citizens Participation Act. We previously dismissed this appeal. *See Kawaja v. Obialo*, No. 01-21-00519-CV, 2023 WL 3183319, at *1 (Tex. App.—Houston [1st Dist.] May 2, 2023, no pet.). On

July 6, 2023, we granted Kawaja's motion for rehearing. We withdraw our opinion and judgment of May 2, 2023, and issue this memorandum opinion and judgment in their stead.

On rehearing, we reaffirm our earlier holding that the trial court's order granting the TCPA motion is void. We further conclude that Kawaja timely appealed the denial of her TCPA motion by operation of law, and we conclude that Obialo's claims are barred by the doctrine of attorney immunity. We reverse the denial by operation of law of Kawaja's motion to dismiss under the TCPA, we render judgment dismissing Obialo's claims, and we remand to the trial court for entry of judgment including a determination of court costs and reasonable attorney's fees in accordance with section 27.009(a)(1) of the Texas Civil Practice and Remedies Code.

## Background

### I.    Obialo represented Jerald Brown in a business dispute.

Attorney and appellee Derek Obialo represented Gerald Brown in a civil lawsuit filed in 2015 against Brown's former business partner, Anthony Sueing, regarding the entities in which Brown alleged an ownership interest: Frontline Recovery and Consulting, Inc. ("FRC"), Frontline Recovery and Consulting North, Inc. ("FRCN"), and Momentum Marketing Group. In August 2018, after a bench trial, the trial court rendered judgment in Brown's favor for a total of approximately

$400,000.[1] Obialo has alleged that his contingency fee agreement with Brown entitled him to 50% of the gross award ($198,800.21) plus expenses of $33,747.25. After entry of judgment, Obialo instituted collection efforts, recovering $148,842.46 through a bank account garnishment proceeding. When the judgment debtors became aware of the garnishment of funds in their bank accounts, they appealed the judgment and hired appellant, Anita Fred Kawaja, as appellate counsel. The trial court ordered that the garnishment proceeds be deposited in the court's registry as security for the appeal. The parties filed their original opening briefs in May and June 2019, and both the judgment debtors and Brown filed amended briefs in September and October 2020. *See* https://search.txcourts.gov/Case.aspx?cn=01-18-00939-CV&coa=coa01 (last visited November 12, 2024).

In December 2020, Kawaja emailed Obialo, with an offer from her clients to settle Brown's claims for $10,000. Obialo forwarded the email to Brown with a message that said, simply: "see below." Brown responded, questioning what that offer meant specifically for Obialo's attorney's fees and why the case was lingering without any payment of the judgment. Brown wrote: "I was honestly under the impression that this case would have been over by now. I did not know that we will be waiting this long., I have been expecting to hear from you quite some time now

---

[1] The judgment was for a combined total of $397,601.04. This number included $55,000 in attorney's fees from Frontline Recovery and Consulting, Inc., and $45,000 in attorney's fees from Frontline Recovery and Consulting North, Inc.

3

since the last time I talk to you." Brown also mentioned distressing personal news—that both his 10-year-old son and his 84-year-old grandmother had died during the year, he had been suffering from health issues (seizures), and he was experiencing high levels of stress, in part, because the lawsuit was unresolved. Obialo responded that the offer was "inadequate" and not "serious." He told Brown: "I will decline it unless they have a more serious offer, we should not make any counteroffer—my opinion. No cause for alarm. We keep pushing." Brown responded, expressing surprise and confusion about what steps were remained in litigation, questioning how much longer it would take, and asking what else Obialo could do to speed the case along. Brown said: "Please help me understand. As I said previously, I had a total of nine seizures. I need a figurative date that this will be over with or I'm about ready to concede."

Obialo alleged that in January 2021, Brown called him several times and told him that Kawaja and Sueing had instructed him to fire Obialo. Obialo alleged that he told Brown that firing him, keeping the proceeds of the judgment, and not paying legal fees could constitute bribery by the judgment debtors and theft of services by Brown. Obialo urged Brown not to proceed, but, according to Obialo's live pleading, Brown "responded that he did not care" about Obialo. On January 13, 2020, Brown texted Obialo, threatening to report him to the State Bar, and saying: "You're playing games to say that everything is out of your hands is a lie. You as my representative

4

can file a motion to drop and dismiss all charges that I brought up against him."

According to Obialo, Brown also asked him to "dismiss the appeal," which Obialo could not do because Brown was the appellee.

On January 20, 2021, at 2:46 PM, Brown emailed Obialo, saying:

Effective immediately, I am terminating the attorney-client relationship for all purposes.

I have asked you repeatedly to dismiss all matters you are representing me on and you have refused to do so.

Any work you perform after this communication is not authorized.

Please advise as to costs first, but make my file available to me within 14 days of this notice.

On February 3, 2021, this Court set the judgment debtors' appeal for submission on March 24, 2021. About a week later, Brown filed in the trial court a signed "Notice of Attorney Client Termination," and an unsigned "Release of Judgment Lien."

On February 25, 2021, Brown filed a second "Notice of Attorney Client Termination," which also included his address and contact information. He also filed a signed "Release of Judgment Lien" the same day. The Release said, in part:

Since Plaintiff [Brown] and Defendants [judgment debtors] have agreed to fully and finally settle all matters of controversy between them in this matter; since JERALD A. BROWN will be contemporaneously notifying the Courts of Appeals in Appeal No. 01-18-00939-CV of his nonsuit and since Defendants in said Judgment, has paid to the satisfaction of Plaintiff in said Judgment. The judgment has been satisfied to JERALD A. BROWN, the party entitled to receive

5

payment of the judgment and, accordingly, JERALD A. BROWN does hereby release all liens existing on any property and monies of FRONTLINE RECOVERY AND CONSULTING, INC, FRONTLINE RECOVER AND CONSULTING NORTH, INC, AND ANTHONY R. SUEING, SR. held in the court registry.[2]

The same day that Brown filed notices in the trial court indicating that he had terminated Obialo and settled and released his claims against the judgment debtors, an agreed motion to dismiss the appeal (cause number 01-18-00939-CV) was filed in this Court.[3] About two weeks later, Obialo challenged the motion as fraudulent on the grounds that he was still Brown's attorney of record, he was not served with the motion, and he did not know about or agree with the motion to dismiss the appeal. He then filed a motion in this Court to withdraw as counsel. On March 25, 2021, this Court dismissed the appeal. *Sueing v. Brown*, No. 01-18-00939-CV, 2021 WL 1134302, at *1 (Tex. App.—Houston [1st Dist.] Mar. 25, 2021, no pet.).

## II.    Obialo sues Brown, the judgment debtors, and Kawaja.

On March 26, 2021, Obialo filed suit against Brown, Sueing, FRC, FRCN, and Kawaja. In his live pleading, which was filed July 12, 2021, Obialo alleged that

---

[2]    Both the Notice of Attorney Client Termination and the Release have a typo—the word "and" is repeated—in the caption, which lists the plaintiff as "JERALD A. BROWN, individually and derivatively on behalf of FRONTLINE RECOVERY AND CONSULTING, INC., AND FRONTLINE RECOVERY AND CONSULTING NORTH, INC., . . . ."

[3]    About a week later, Kawaja electronically filed copies of the same documents in this the trial court. The document transmitting them to the trial court includes the case caption, which includes the same duplicated "and" typo as the documents filed by Brown.

the defendants had acted together to deprive him of his attorney's fees in Brown's suit against Sueing, FRC, and FRCN. He pleaded claims for breach of contract and theft of services as to Brown,, tortious interference with a contract as to Sueing, FRC, and FRCN, and conspiracy and conversion as to all defendants.

Kawaja answered the lawsuit and moved to dismiss Obialo's claims under the Texas Citizens Participation Act.[4] She argued that Obialo's lawsuit was based on her communications and court filings on behalf of her clients, and she asserted that this violated her right of petition under the TCPA. She also argued that even if Obialo could meet his burden to make a prima facie case with clear and specific evidence, the court must nevertheless dismiss because his claims against her were barred by the doctrine of attorney immunity. Kawaja's affidavit was attached to the TCPA motion. Among other things, she averred that she had never met Brown "in person or otherwise" and that she did not have any personal or direct contact with Brown "until late February 2021—after receiving notice that he fired his lawyer Derek Obialo because, at that point, Brown was proceeding *pro se*." She further averred: "I have never promised Brown any payment or any sum of money or thing of value." She also denied drafting the February 25, 2021, Release of Judgment Lien.

---

[4]     This appeal concerns only Kawaja's motion to dismiss and Obialo's claims against Kawaja. The parties have informed the Court that Obialo has resolved the remainder of his claims.

On July 23, 2021, the trial court held a hearing on Kawaja's TCPA motion to dismiss. But the court did not rule on the motion by the 30th day after the hearing, and the motion was denied by operation of law.

## III. Kawaja files her first appeal from the denial of the TCPA motion by operation of law.

On August 24, 2021, Kawaja filed a notice of appeal from the denial by operation of law of her TCPA dismissal motion. That appeal was docketed in appellate case number 01-21-00458-CV. About two weeks later, the trial court signed an order granting Kawaja's TCPA motion, and, citing the Texas Supreme Court's 40th COVID order, the trial court purported to extend the deadline for ruling on the motion even though it had already passed. Kawaja filed an "emergency" motion to dismiss her appeal without prejudice. In her motion, she recognized that an automatic stay deprived the trial court of its power to grant the motion.[5] She also sought an extension of time to file another appeal in the event that she would be unable to secure the desired ruling from the trial court before the time passed for appealing the denial of her motion by operation of law. On September 17, 2021, this Court granted Kawaja's motion to dismiss and motion to expedite the mandate. *See Kawaja v. Obialo*, No. 01-21-00458-CV, 2021 WL 4256091, at *1 (Tex. App.—

---

[5] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(b) (providing for stay of all proceedings in trial court pending resolution of appeal of denial of motion to dismiss under TCPA).

8

Houston [1st Dist.] Sept. 17, 2021, no pet.) (mem. op.) (issuing mandate immediately). Kawaja's motion for extension of time to file a second notice of appeal was denied as premature. *See id.* Upon remand, on September 27, 2021, the trial court signed an order granting Kawaja's TCPA motion and extending the time for doing so under the Supreme Court's 40th COVID order until September 27, 2021.

## IV. Kawaja files a second appeal.

Ordinarily, a party appeals from an adverse ruling or judgment from the trial court seeking relief in the form of a decision in her favor, reversing or vacating the trial court's allegedly erroneous action. This appeal did not follow that predictable pattern.

After the trial court granting Kawaja the relief she sought, on September 27, 2021, she filed a second notice of interlocutory appeal challenging the trial court's earlier denial by operation of law of her TCPA motion to dismiss. She also filed a motion for extension of time to file a notice of appeal. Kawaja explained that she needed an extension of time because it was possible that the trial court's September 27, 2021, order was also void, depending upon how the Supreme Court's 40th COVID order might be interpreted. Kawaja wanted to be able to challenge the denial by operation of law in the event that it turned out the September 27, 2021, order was also void. Obialo opposed the motion for extension of time to file the second notice

of appeal. On October 7, 2021, this Court granted the motion for extension of time to file the second notice of appeal.

Obialo moved to dismiss Kawaja's appeal and for sanctions for the filing of a frivolous appeal. On January 19, 2023, the Court of Appeals granted the motion for extension of time to file the notice of appeal. This Court informed the parties that the motions for sanctions and to dismiss would be carried with the case, and it extended Kawaja's deadline to file a brief until January 30, 2023. The next day, Kawaja filed a motion to dismiss for lack of jurisdiction, with an alternative "second partly opposed motion for extension of time to file opening brief." This Court granted the motions to dismiss and dismissed the appeal, but in July 2023 it granted rehearing and ordered the parties to file briefs.

## V.    Obialo obtains mandamus relief.

While the second appeal was pending, Obialo filed a petition for writ of mandamus asserting that the trial court abused its discretion by granting Kawaja's TCPA motion to dismiss after it had been denied by operation of law. This Court concluded that the order was void and granted mandamus. *In re Obialo*, No. 01-23-00382-CV, 2023 WL 4356190, at *3 (Tex. App.—Houston [1st Dist.] July 6, 2023, [mandamus denied]) (mem. op.). We explained:

> Obialo contends that the trial court's September 27, 2021, order is void, and we agree. Our Court's recent case, *Cweren v. Eureka Multifamily Group, L.P.*, No. 01-21-00470-CV, 2023 WL 2977755, at *8 (Tex. App.—Houston [1st Dist.] Apr. 18, 2023, no pet. h.) (mem.

10

op.), is controlling here. In *Cweren*, our Court considered whether an order granting a TCPA dismissal motion on September 3, 2021, was effective when the motion had already been denied by operation of law several days prior, on August 30, 2021. *Id.* The *Cweren* appellants argued that their TCPA motion to dismiss was not denied by operation of law because the trial court "invoked the authority granted by the Texas Supreme Court's emergency orders and [extended] the deadline for it to rule on [appellants'] TCPA [m]otion [to] September 3, 2021." *Id.* (quoting appellants' brief). *Cweren* explained the relevant provisions of the TCPA as well as the relevant Texas Supreme Court Emergency Order Regarding the COVID-19 State of Disaster. *Id.* at *9–10. We held that the Supreme Court's emergency order could not be used "after the deadline to rule has passed and after the TCPA motion has been denied by operation of law to revive or extend the mandatory deadline for the trial court to rule on a TCPA motion to dismiss." *Id.* at *11 (emphasis in original).

*Id.*

Kawaja sought mandamus relief from the Supreme Court of Texas, which denied mandamus on September 15, 2024.

## Analysis

On rehearing, the parties filed briefs on the merits for the first time in this case. Kawaja raises four issues. In her first issue, Kawaja challenges this Court's jurisdiction based on her contention, notwithstanding our prior decision granting mandamus on this issue, that the denial by operation of law was superseded by the trial court's grant of the TCPA motion. In her second, third, and fourth issues, Kawaja challenges the merits of the TCPA motion, specifically, whether the TCPA applies to Obialo's claims (issue 2), whether attorney immunity precludes this suit

11

as a matter of law (issue 3), and whether Obialo made a prima facie case for each of element of his claims (issue 4).

## I.   The order granting the TCPA motion is void.

In her first issue, Kawaja asserts that we lack jurisdiction over this appeal, which she initiated. She argues that the trial court was authorized to grant the TCPA motion after it was denied by operation of law, and she argues that this Court should address this issue en banc and reverse binding precedent to the contrary.[6]

### A.   Law of the case does not preclude our reconsideration of this issue.

This issue is essentially a request for us to reconsider our decision in Obialo's mandamus. "Under the law of the case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case." *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). An exception to the discretionary law of the case doctrine permits a court of appeals to reconsider an issue if the original decision is clearly erroneous. *Id.* Kawaja contends that our decision was erroneous, and in the interest of bringing this case to final disposition, we will consider this issue.

---

[6]   This issue is essentially a request for us to reconsider our decision in Obialo's mandamus.

**B.    Kawaja relies on caselaw that is distinguishable.**

In her brief, Kawaja relies on *In re Panchakarla*, 602 S.W.3d 536, 540 (Tex. 2020), for the proposition that the trial court retained the power to revisit its TCPA ruling after the motion was overruled by operation of law. In addition, she asserts that this Court erred in *Cweren* and *Obialo*, and should instead follow opinions from Fort Worth, El Paso, and Corpus Christi. *See Pepper v. Wilson*, No. 02-22-00107-CV, 2023 WL 2534626 (Tex. App.—Fort Worth, Mar. 16, 2023, pet. denied); *Lakeway Psychiatric & Behavioral Health, PLLC v. Brite*, 656 S.W.3d 621, 633 (Tex. App.—El Paso 2022, no pet.); *Miller v. Castleman*, 13-21-00334-CV, 2022 WL 16642121 (Tex. App.—Corpus Christi, Nov. 3, 2022, no pet.). Finally, in a post-briefing letter to the Court, Kawaja argued that *Morath v. Lampasas Indep. Sch. Dist.*, 686 S.W.3d 725, 742–43 (Tex. 2024), provided additional support for her position. None of these cases persuade us that *Cweren* and *Obialo* were wrongly decided.

**C.    *Panchakarla* does not control the outcome here.**

In *Panchakarla*, the trial court promptly and in writing granted the defendants' motion to dismiss under the TCPA. *Panchakarla*, 602 S.W.3d at 538. The plaintiff timely filed a motion for reconsideration and motion for new trial. *Id.* The trial court was persuaded, and more than 30 days after the TCPA hearing, the court vacated its earlier dismissal and denied the motion to dismiss under the TCPA.

13

*Id.* at 538–39. The defendants appealed the denial of their TCPA motion and filed a petition for writ of mandamus. *Id.* at 539. The court of appeals conditionally granted mandamus, reasoning that the statutory 30-day deadline divested the court of power to vacate its dismissal or grant a new trial. *Id.*

The Supreme Court began by observing that "trial courts retain plenary power over their judgments until they become final," and that "during that time, the court may grant a new trial or vacate, modify, correct, or reform the judgment." *Id.* In addition, it noted that a "trial court also retains continuing control over interlocutory orders and has the power to set those orders aside any time before a final judgment is [rendered]." *Id.* (quoting *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993). Thus, the question before the Supreme Court was "[w]hether the TCPA prohibits trial courts from exercising their plenary power to revisit their Section 27.005(a) rulings after the 30-day window has closed." *Id.* This, the Supreme Court said, depended "on the Legislature's intent as manifested in the enacted language." *Id.*

The Supreme Court considered the language of the statute, including the "very limited" constraint imposed on the authority of the trial court: the statute makes denials of TCPA dismissal motions immediately appealable and stays all trial court proceedings until a perfected interlocutory appeal has been concluded. *Id.* Because the statute was silent about the trial court's ability to reconsider its ruling on a TCPA

14

dismissal motion, the Supreme Court followed well-established law and held that "the TCPA does not impose a 30-day restriction on a trial court's authority to vacate a ruling on a TCPA motion to dismiss." *Id.* at 540. The Court further stated:

> Section 27.005(a) requires a timely ruling, but says nothing about a trial court's power to vacate such a ruling outside the statute's 30-day deadline. To hold that the trial court had no power to vacate the dismissal order based on new precedent, as occurred here, would require us to "judicially amend" the TCPA "by adding words that are not contained in the language of the statute." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015). But we cannot do so because the statute's "text is the alpha and the omega of the interpretive process." *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017).
> Put simply, nothing in the statutory scheme prohibits trial courts from vacating their own orders when they otherwise have plenary power to do so.

*Id.* at 541.

A close reading of *Panchakarla* reveals that it is not controlling here because the procedural posture of *Panchakarla* was opposite of the procedural posture in this case. In *Panchakarla*, the trial court had the power to vacate its earlier grant, which had the effect of leaving the motion without any ruling in place. *Id.* The trial court there wished to deny the TCPA motion. *Id.* As a matter of statutory construction, the ruling-less TCPA motion would then have been denied by operation of law because more than 30 days had elapsed since the hearing. *Id.* The Supreme Court concluded: "In this procedural posture, we need not consider whether the trial court's order granting a new trial restarted the trial clock and permitted a new hearing and ruling

15

on the dismissal motion, because even if it did not, the same result ensues." *Id.* Here, that would not be so because whether the vacatur of the denial by operation of law entitled the court to enter an out-of-time order granting the TCPA motion to dismiss remains an open question. Thus, *Panchakarla* is not controlling of Kawaja's first issue. *See id.*

**D.** **Other courts of appeals focus on the language of the Supreme Court's emergency orders and the record evidence of how the COVID pandemic impacted events in a particular case.**

Kawaja then argues that other courts of appeals have relied on the Supreme Court's COVID orders to extend deadlines. Two of the three cases she relies on, *Pepper* and *Miller*, concern the Texas Medical Liability Act ("TMLA"), not the TCPA. In *Pepper*, the defendant doctor sought dismissal under the Texas Medical Liability Act. *Pepper*, 2023 WL 2534626, at *2. The doctor argued that the plaintiff had not timely requested an extension under the operative COVID order, the *Fortieth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 911 (Tex. 2021), which ended on October 1, 2021.[7] *Id.* at *4. The defendant doctor further

---

[7] The *Fortieth Emergency Order* is also the order that was in effect at the relevant time in this case. This order stated, in part:

. . . .
3.    Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal, without a participant's consent:
        a.    except as provided in paragraph 4 [regarding certain Family Law proceedings], modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than October 1, 2021;

16

argued that the next operative COVID order, the *Forty-Third Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 929 (Tex. 2021), which began on October 1, 2021, did not include the same provision authorizing the trial court to extend the deadline for filing an expert report. *Id.* The court of appeals considered the language of both orders, and it concluded that the plaintiff's request was timely. *Id.*

Next the court of appeals considered whether the trial court was empowered by the COVID order to "modify a deadline that had already passed." *Id.* at *8. The court of appeals relied on *Miller*, another TMLA case, which held that the trial court was authorized to retroactively extend the expert-report deadline. *Id.* at *9 (quoting *Miller*, 2022 WL 16642121, at *3).

In *Miller*, the plaintiff filed the expert report 60 days after the deadline, without first having sought an extension of time. *Miller*, 2022 WL 16642121, at *1. After the defendant filed a motion to dismiss based on the untimeliness of the expert report, the plaintiff responded with a request to retroactively extend the deadline. *Id.* She also provided a declaration from expert explaining that she was unable to complete the report before the deadline because she had been seriously ill with COVID and related complications in the months leading up to the deadline. *Id.* The

. . . .

629 S.W.3d at 912.

17

trial court denied the motion to dismiss under the TMLA, specifically referencing "the COVID issues raised by plaintiff," at the hearing. *Id.* at *2.

On appeal, the court of appeals held that the COVID order was limited only by its own language, which permitted trial courts to modify statutory deadlines "subject only to constitutional limitations." *Id.* at *3. The appellant did not argue that constitutional provisions "forbade the trial court from retroactively granting an extension." *Id.* at *3. *Miller* also relied in part on *Kim v. Ramos*, 632 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2021, no pet.), for the proposition that "extensions of the expert report deadline have on occasion been granted by a trial court after the deadline has passed." *Miller*, 2022 WL 16642121, at *3. We disagree with this characterization of *Kim*.

In *Kim*, this Court held that a trial court had properly extended the 120-day deadline for filing an expert report under the Supreme Court's emergency COVID orders when the plaintiff repeatedly requested extensions before the filing deadlines and explained the need for the extension as being related to his trial counsel being quarantined while suffering from COVID. *Id. Kim* did not address the question of retroactive extension of deadlines under the Supreme Court's emergency orders. *See id.* Nevertheless, *Pepper* followed *Miller* and held that the trial court could retroactively extend the deadline for filing an expert report under the TMLA. *Pepper*, 2023 WL 2534626, at *9.

18

The *Lakeway Psychiatry* case is also distinguishable. *Lakeway Psychiatry*, 656 S.W.3d at 631. In that case, the court of appeals noted first that Panchakarla "yields no guidance on the Emergency Order's effect on TCPA deadlines," because all the relevant events—the TCPA motion and hearing, for example—occurred in 2019, "well before the Supreme Court's issuance of emergency orders." *Id.* Looking to cases from other courts of appeals, the El Paso Court of Appeals concluded that whether the trial court had erred by granting the TCPA motion more than 30 days after the hearing. *Id.* at 633.

The record in *Lakeway Psychiatry* showed that the TCPA hearing was held on March 4, 2020, nine days before the Supreme Court issued the first COVID emergency order. *Id.* At a later hearing, the trial court "made it clear the disaster had impacted court operations and it had never intended to deny the motion to dismiss." *Id.* The court of appeals held that the record supported the trial court's reliance on the Supreme Court's COVID order because it showed that during the period between the hearing and the ruling, "the trial court dealt with the impact of disaster-related complexities, describing it had been faced with having 'to decide what to do, how to deal with this situation, what decisions to make for the operation of the courts as a whole.'" *Id.*

19

**E.    The record in this case does not demonstrate how the COVID pandemic contributed to the court's delay in granting the TCPA motion.**

Here, the hearing and rulings occurred in 2021, during the period in which the Fortieth COVID order was in effect. The record here does not indicate that the trial court granted the TCPA motion more than 30 days after the hearing due to delays or disturbances attributable to COVID. To the contrary, the record shows that the entry of the order granting Kawaja's TCPA motion was a part of litigation strategy. Kawaja voluntarily dismissed a timely filed appeal from the denial of her TCPA motion to lift the automatic stay. She then asked the trial court to enter an order in her favor. Having obtained the relief sought, she filed a second notice of appeal from the denial by operation of law of her TCPA. That is, Kawaja appealed an order that had been superseded at her request and then argued that her appeal should be dismissed as without jurisdiction.[8]

---

[8]    While Kawaja has argued that this was merely an alternative argument, it could also be characterized as an attempt to obtain an advisory opinion because an opinion in her favor would not have altered the status quo after the trial court's order granting her TCPA motion. We explained the constitutional prohibition against advisory opinions in *ASC Beverages, LLC v. Tex. Alcoholic Beverage Comm'n*, 695 S.W.3d 656, 660 (Tex. App.—Houston [1st Dist.] 2024, pet. denied):

> An order or judgment entered by a court that lacks jurisdiction is void and would not bind the parties. [*The State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994).] A nonbinding decision is an advisory opinion, and it is prohibited by article II, section 1 of the Texas Constitution. *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam) ("Under article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions.");

**F.** *Morath* **followed the modern trend of not construing statutory provisions as jurisdiction absent clear intent and focused on statutory construction.**

Finally, in a letter submitted in September 2024, Kawaja argues that *Morath v. Lampasas Independent School District*, 686 S.W.3d 725, 742–43 (Tex. 2024), is "instructive, if not controlling" in determining this Court's jurisdiction over this appeal. Morath is also not a TCPA case. *Id.* Morath involved a dispute under the Texas Education Code regarding a petition to detach real property from one school district and annex it to another. *Id.* at 728. The Election Code requires the board of each school district to hold a hearing and adopt a resolution approving or disapproving the petition. *Id.* When the school boards disagree, the Commissioner of Education can settle the matter in a de novo administrative appeal. In *Morath*, one school district promptly approved the petition, but the other failed to act on the petition. *Id.* When the matter was finally brought to the Commissioner of Education, his decision was issued after two years, not the statutorily mandated 180 days. *Id.*

The Supreme Court focused its analysis throughout *Morath* on statutory construction, saying: "Statutory requirements are presumed to be nonjurisdictional absent clear legislative intent to the contrary. To discern legislative intent, we look

---

*Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998) ("The courts of this state are not empowered to give advisory opinions."); *see also* TEX. CONST. art. II, § 1 (separation of powers).

21

to the statute's plain meaning, any specific consequences for noncompliance, the statute's purpose, and each construction's resulting consequences." *Id.* at 742–43. The Supreme Court first noted that while the Election Code imposed a 180-day deadline for issuance of a decision, it did not impose any specific consequence for noncompliance with the deadline. *Id.* at 743. The Supreme Court concluded that this weighed in favor of finding that the deadline was not jurisdictional but meant to spur the agency to act promptly. The Court considered other factors as well:

> Other considerations also point to the deadline being nonjurisdictional. The statute exists to provide for prompt review and resolution by the Commissioner to definitively settle a stalemate between school districts. But a jurisdictional construction could (1) harm aggrieved appealing parties for delay that may be outside their control, (2) promote gamesmanship to intentionally delay proceedings, and (3) leave untimely administrative decisions subject to future attack, with students potentially seesawed between school districts. A nonjurisdictional construction, on the other hand, would likely cause minimal disruption by merely perpetuating the status quo during any delay. Generally, a late decision on the merits is better than never, and unlawful bureaucratic delay should not rob an appealing party and the public—including students—of both administrative and judicial review when boards disagree on detachment and annexation.

*Id.* at 743–44.

## G. *Morath's* approach of focusing on statutory construction supports our prior holding.

This case is not like *Morath.*

The Texas Citizens' Participation Act "is a bulwark against retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern." *Dall.*

*Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019). The purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. It is intended "to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding).

To effectuate the purpose of the TCPA, the statute provides for expedited and early dismissal of cases to which the law applies. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(b), (c) (requiring motion to dismiss under TCPA to be filed no later than 60 days after service of lawsuit and suspending discovery until after ruling); *id.* § 27.004 (requiring hearing on motion to be held no later than 60, 90, or 120 days after service of motion depending on docket conditions or need for discovery); *id.* § 27.005 (providing that court must rule on dismissal motion no later than 30th day following date hearing concludes); *id.* § 27.008 (providing that if court fails to rule by 30th day following date hearing concludes, motion to dismiss is denied by operation of law and movant may appeal). By providing these deadlines, establishing a failure to timely rule on a TCPA motion results in its overruling by operation of law, and permitting and expediting an immediate appeal, the Legislature has

communicated its intent that those who have been unfairly targeted by lawsuits meant to chill their rights are able to expedite dismissal from suit and its intent that those with potentially meritorious claims not be needlessly hindered in their pursuit of justice.

The Legislature intended that the TCPA remedy would be cumulative of other remedies and procedural devices. *Id.* § 27.011. The statute provides: "This chapter does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions." *Id.* § 27.011(a). That is, a party whose TCPA dismissal motion is denied still can seek early disposition in the case through another motion or procedural device. This is especially true when, as in this case, the movant seeks dismissal based on a "matter of law" argument for its affirmative defense, which can properly be raised by a traditional motion for summary judgment. *See* TEX. R. CIV. P. 166a.

The TCPA also provides: "This chapter shall be construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011(a). Permitting a trial court to grant a motion to dismiss beyond the statutory deadline would frustrate the intent of the Legislature by undermining the sense of urgency in resolving these motions, subjecting people whose constitutional rights are under attack to months or years of needless litigation, or delaying or denying justice to those with meritorious claims by preventing them from promptly engaging in discovery. The Dallas Court of

24

Appeals has held that permitting an untimely grant of a TCPA motion would be "directly contrary to the express statutory language." *Long v. Long*, 681 S.W.3d 805, 814 (Tex. App.—Dallas 2023, no pet.). In *Long*, the court of appeals opined:

> To conclude otherwise could lead to absurd results. While the timeline on this record reflects a wholesale failure to faithfully promote the expeditious resolution under two separate dismissal proceedings, it was at least less than six months from the hearing. Any interpretation that would permit a trial court to take affirmative action, other than to vacate a ruling after 30 days, could lead the trial court, sua sponte or at the behest of the parties, to reconsider its ruling on the eve of trial. That is well beyond what the Legislature contemplated in its statutory construct

*Id.* at 814, n.3.

We agree. In *Cweren*, we considered the language of the statute to determine the effect of a trial court granting a TCPA dismissal motion after the statutory deadline:

> The trial court must rule on a TCPA motion to dismiss by "the 30th day following the date of the hearing on the motion." *Id.* § 27.005(a). This last deadline is mandatory. *In re Neely*, 2020 WL 1434569, at *2; *Direct Com. Funding*, 407 S.W.3d at 401. The Legislature did not give the trial court discretion to extend its deadline to rule, and instead provided that if the trial court does not rule on the TCPA motion to dismiss within thirty days after the hearing, then the motion is denied by operation of law. *See In re Neely*, 2020 WL 1434569, at *2; *Direct Com. Funding*, 407 S.W.3d at 401; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(a). If the trial court signs an order purportedly granting a TCPA motion to dismiss more than thirty days after the hearing on the motion, that order is void, and the controlling ruling is the denial of the motion by operation of law. *In re Neely*, 2020 WL 1434569, at *4; *Dallas Morning News, Inc. v. Mapp*, No. 05-14-00848-CV, 2015 WL 3932868, at *3 (Tex. App.—Dallas June 26, 2015, no pet.) (mem. op.); *see also Montiel v. Lechin*, No. 01-18-00781-CV, 2019 WL 1186695,

at *2 (Tex. App.—Houston [1st Dist.] Mar. 14, 2019, no pet.) (mem. op.) ("[T]rial courts lack authority to grant a motion to dismiss under the TCPA more than 30 days after the hearing on the motion.").

*Cweren*, 2023 WL 2977755, at *9. We followed *Cweren* in *Obialo*, and we reaffirm that holding here. We overrule Kawaja's first issue.

## II.    The appeal is not untimely.

On appeal, Obialo invites us to dismiss this case on the grounds that Kawaja did not timely file her notice of appeal or offer a reasonable explanation for the delay. We decline this invitation.

The trial court held a hearing on Kawaja's TCPA motion on July 23, 2021. The 30th day after this hearing was Sunday, August 22, 2021, so the TCPA motion was denied by operation of law on August 23, 2021. Kawaja timely filed a notice of appeal on August 24, 2021. On September 9, 2021, while the automatic stay was in effect, the trial court signed an order granting the TCPA dismissal motion. Three days later, on September 13, 2021, which was coincidentally the last day on which a notice of appeal of the denial by operation of law would be timely, Kawaja filed a motion to voluntarily dismiss her appeal without prejudice. Four days later, we dismissed her appeal without prejudice. Ten days after that, on September 27, 2021, the trial court signed an order granting Kawaja's motion to dismiss. That same day, Kawaja filed a notice of appeal from the now-superseded order, and a motion for

26

extension of time to file the notice of appeal the next day. We granted the extension of time to file the notice of appeal and ordered briefing.

A notice of accelerated appeal must be filed within 20 days after the judgment or order is signed. TEX. R. APP. P. 26.1(b). An appellate court may extend the time for filing a notice of appeal if the appellant files the notice of appeal in the trial court and a motion for extension of time to file a notice of appeal within 15 days after the deadline for the filing the notice of appeal. *Id.* 26.3. A court of appeals has jurisdiction over any appeal in which the appellant files an instrument in a bona fide attempt to invoke the appellate court's jurisdiction. *Chen v. Razberi Techs., Inc.*, 645 S.W.3d 773, 775 (Tex. 2022); *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997). "[P] rocedural rules should be construed and applied so that the right of appeal is not unnecessarily lost to technicalities." *Morath*, 686 S.W.3d at 741 (citing *Chen*, 645 S.W.3d at 775 (quoting *Verburgt*, 959 S.W.2d at 616)).

Here, we concluded that Kawaja filed her motion for extension of time to file the notice of appeal within 15 days after the deadline for filing the notice of appeal, and we granted the motion for extension of time. We will not disturb our prior ruling.

## III.    The TCPA applies to Obialo's allegations against Kawaja.

In her second issue, Kawaja argues that the TCPA applies to Obialo's claims against her. We agree.

## A.    Standard of review

We review de novo a trial court's ruling on a motion to dismiss filed under the TCPA. *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 83 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 892 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 200 (Tex. 2023) ("We review de novo whether the Act applies[.]"). We view the evidence and the pleadings in the light most favorable to the nonmovant. *Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017, no pet.). "[W]e remain mindful of our obligation to consider appellees' pleadings in the light most favorable to appellees and in favor of the conclusion that appellees' claims are not reliant on protected expression." *Cweren*, 2023 WL 2977755, at *16 (citing *Abundant Life Therapeutic Servs., Tex., LLC v. Headen*, No. 05-20-00145-CV, 2020 WL 7296801, at *3 (Tex. App.—Dallas Dec. 11, 2020, pet. denied) (mem. op.)); *see also Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (noting that generally plaintiffs' pleadings are "the best and all-sufficient evidence of the nature of the action."). We read the pleadings and supporting or opposing affidavits "in the manner most sympathetic to the TCPA's non-applicability." *White Nile Software, Inc. v. Carrington, Coleman, Sloman & Blumenthal, LLP*, No. 05-19-00780-CV, 2020 WL 5104966, at *4 (Tex. App.—Dallas 2020, pet. denied) (mem. op.). We "favor[ ] the conclusion that [the

28

nonmovants'] claims are not predicated on protected expression." *Union Pac. R.R. Co. v. Dorsey*, 651 S.W.3d 692, 695 (Tex. App.—Houston [14th Dist.] 2022, no pet.).

## B. Right to petition

In her motion to dismiss, Kawaja asserted that Obialo's legal action is based on and in response to her exercise of the right to petition. The TCPA defines the "right to petition" as

(A) a communication in or pertaining to:

(i) a judicial proceeding;

. . . .

and

(E) any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.

TEX. CIV. PRAC. & REM. CODE § 27.001(4)(A)(i), (E). The term "communication" includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic. *Id.* § 27.001(1). Although not defined in the statute, "[t]he ordinary meaning of 'judicial proceeding' is 'an actual, pending judicial proceeding.'" *Newstream Roanoke 6.125, LLC v. Shore*, No. 02-22-00506-CV, 2023 WL 5615871, at *4 (Tex. App.—Fort Worth Aug. 31, 2023, no pet.) (mem. op.) (quoting *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 429 (Tex. App.—Dallas 2019, pet. denied)); *see also Levatino v. Apple*

29

*Tree Café Touring, Inc.*, 486 S.W.3d 724, 729 (Tex. App.—Dallas 2016, pet. denied) (stating that "a judicial proceeding is 'any proceeding initiated to procure an order or decree, whether in law or in equity.'") (quoting *Judicial proceeding*, Black's Law Dictionary (10th ed. 2014)).

Obialo's live pleading alleged that Kawaja communicated with Brown concerning post-judgment settlement of his claims against her client while that case was pending on appeal. Obialo further alleges that Kawaja, in concert with her clients and despite knowing that Obialo was entitled to a percentage of Brown's recovery in accordance with a contingency fee contract, persuaded and encouraged Brown to fire Obialo and directly settle his claims with Sueing and the entity clients. This plainly fits the definition of exercise of the right to petition, and we hold that the TCPA applies.

## IV.    Obialo's claims are barred by attorney immunity.

Ordinarily, once "the movant meets her initial burden, then the burden shifts to the nonmovants to establish "by clear and specific evidence a prima facie case for each essential element" of their claims. TEX. CIV. PRAC. & REM. CODE § 27 005(c); *USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 199–200 (Tex. 2023). Under the TCPA, once the nonmovant has established a prima facie case, the court may nevertheless dismiss the case if the movant "establishes an affirmative defense

30

or other grounds" on which the movant "is entitled to judgment as a matter of law." TEX. CIV. PRAC. & REM. CODE § 27.005(d).

We assume for the purpose of our analysis that Obialo satisfied his burden to make a prima facie case for each essential element of his claims. Nevertheless, we conclude that the trial court should have granted the motion to dismiss because attorney immunity bars Obialo's claims against Kawaja.

## A.     Attorney immunity

"[A]ttorneys are duty-bound to competently, diligently, and zealously represent their clients' interests while avoiding any conflicting obligations or duties to themselves or others." *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 79 (Tex. 2021); *see also* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.01 & cmt. 6, 1.06, 1.08, 2.02. "Under Texas law, attorneys are generally immune from civil liability to nonclients for actions taken within the scope of legal representation if those actions involve "the kind of conduct" attorneys engage in when discharging their professional duties to a client." *Taylor v. Tolbert*, 644 S.W.3d 637, 642 (Tex. 2022). "Attorney immunity exists to promote such "loyal, faithful, and aggressive representation" by alleviating in the mind of the attorney any fear that he or she may be sued by or held liable to a non-client for providing such zealous representation." *Haynes & Boone*, 631 S.W.3d at 79; *see Youngkin v. Hines*, 546 S.W.3d 675 (Tex. 2018) (citing *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)).

"The common-law attorney-immunity defense applies to lawyerly work in 'all adversarial contexts in which an attorney has a duty to zealously and loyally represent a client' but only when the claim against the attorney is based on 'the kind of conduct' attorneys undertake while discharging their professional duties to a client." *Taylor*, 644 S.W.3d at 646 (quoting *Haynes & Boone*, 631 S.W.3d at 67). "Stated inversely, if an attorney engages in conduct that is not 'lawyerly work' or is 'entirely foreign to the duties of a lawyer' or falls outside the scope of client representation, the attorney-immunity defense is inapplicable." *Id.* (citing *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 47, 51–53 (Tex. 2021)).

"In determining whether conduct is 'the kind' immunity protects, the inquiry focuses on the *type* of conduct at issue rather than the alleged wrongfulness of that conduct." *Taylor*, 644 S.W.3d at 646. For attorney immunity to apply, the alleged conduct must involve the attorney's skills as an attorney and her uniquely lawyerly capacity. *Id.* "An attorney has no right of recovery, under any cause of action, against another attorney arising from conduct the second attorney engaged in as part of the discharge of his duties in representing a party in a lawsuit in which the first attorney also represented a party." *Bradt v. West*, 892 S.W.2d 56, 76 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Attorney immunity can even apply to allegedly fraudulent or criminal actions taken by an attorney as part of the discharge of his duties in representing a client. *See Bethel v. Quilling, Selander, Lownds, Winslett &*

*Moser, P.C.*, 595 S.W.3d 651, 657 (Tex. 2020) (criminal conduct); *Cantey Hanger*, 467 S.W.3d at 483–86 (fraud).

"[W]hen the defense applies, counsel is shielded only from liability in a civil suit, not from 'other mechanisms' that exist 'to discourage and remedy' bad-faith or wrongful conduct, including sanctions, professional discipline, or criminal penalties, as appropriate." *Taylor*, 644 S.W.3d at 646; see *Haynes & Boone*, 631 S.W.3d at 79–80. "If an attorney's conduct violates his professional responsibility, the remedy is public, not private." *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *7–8 (Tex. App.— Houston [1st Dist.] Mar. 20, 2008, pet. denied).

**B.     Attorney immunity bars Obialo's claims against Kawaja.**

In this case, the type of conduct that Obialo's claims challenge is Kawaja's communication with Brown. However, communicating a settlement offer to an adverse party or negotiating a settlement with an adverse party on behalf of a client is "'the kind of conduct' attorneys undertake while discharging their professional duties to a client." *Taylor*, 644 S.W.3d at 646 (making demand on client's behalf, including demand to sign order to resolve dispute, is within realm of legal representation). There is no dispute that Kawaja was representing her clients when communicating with Brown about the lawsuit that had been pending on appeal. Obialo characterizes Kawaja's behavior as instructing Brown to terminate Obialo's

33

employment and communicating with Brown when he was represented by counsel. Those are allegations that the alleged conduct was wrongful, not that the alleged conduct was entirely foreign to the duties of a lawyer or outside the scope of client representation. *See Taylor*, 644 S.W.3d at 646.

Accordingly, we conclude the trial court should have timely granted the TCPA motion. We sustain Kawaja's third issue, and we do not to address Kawaja's fourth issue in this opinion. *See* TEX. R. APP. P. 47.2

## Conclusion

We reverse the trial court's denial of Kawaja's TCPA motion to dismiss by operation of law. We render judgment dismissing Obialo's claims against Kawaja, and we remand to the trial court for entry of judgment including a determination of court costs and reasonable attorney's fees in accordance with section 27.009(a)(1) of the Texas Civil Practice and Remedies Code.


Peter Kelly
Justice

Panel consists of Chief Justice Adams, and Justices Kelly and Goodman.